McGowan Unemployment Compensation Case.
Grant Building, Incorporated, Appellant, v.
Unemployment Compensation Board
of Review.

Argued April 15, 1965; reargued April 13, 1966. Before ERVIN, P. J., WRIGHT, WATKINS, MONTGOMERY, JACOBS, HOFFMAN, and SPAULDING, JJ.

*E. B. Strassburger,* with him *E. B. Strassburger, Jr.,* and *Strassburger and McKenna,* for appellant.

*Sydney Reuben,* Assistant Attorney General, with him *Walter E. Alessandroni,* Attorney General, for Unemployment Compensation Board of Review, appellee.

OPINION BY WRIGHT, J., September 15, 1966:

Andrew A. McGowan was last employed as a janitor by Grant Building, Inc., in the City of Pittsburgh. His final day of work was August 5, 1963. The Bureau of Employment Security granted his application for benefits. The Referee reversed the Bureau's decision on the ground that claimant was disqualified for wilful misconduct under Section 402(e) of the Unemploy-

ment Compensation Law. Act of December 5, 1936, P. L. (1937) 2897, 43 P.S. 751 et seq. The Board of Review affirmed the decision of the Referee, but based claimant's disqualification on voluntarily leaving work without cause of a necessitous and compelling nature under Section 402(b)(1) of the statute. Claimant then appealed to this court. Upon petition of the Board of Review, we remanded the record for further study and consideration. The Board of Review thereafter vacated its initial decision and substituted a decision allowing benefits. The employer has appealed.

This case has given us considerable concern. It has been argued and reargued. An unusual factual situation is presented. It is really a contest between claimant and Local No. 29, Building Service Employes Union. The employer stands innocently in the middle. Local No. 29, a bona fide union, became the bargaining agent for the employes in 1945. As a part of the agreement entered into with the employer, it was necessary for all employes to become members of the union. Claimant was then an employe but was in military service. Upon his return to work he did not join the union. For some unexplained reason, this fact was not ascertained until eighteen years later. The record supports the following pertinent findings by the Board of Review: "4. Claimant was never requested to join the local union until August 5, 1963. 5. The claimant was given the opportunity to join the union upon a payment of $51.00, which included $15.00 for initiation fee, and dues for the year 1962-1963. 6. The claimant refused to pay the $51.00 and thereby became unemployed".

The record discloses that, when claimant's nonunion membership became apparent, the employer interceded with the union on his behalf. Instead of requiring claimant to pay full back dues for eighteen years, the union agreed to afford claimant the opportunity to

place himself in good standing for the comparatively nominal sum of $51.00. The Board of Review reasoned originally that this was a fair adjustment and that, since claimant did not avail himself of the opportunity, "he did not exert reasonable effort to maintain the employer-employee relationship". The Board's change of position was based on its interpretation of the intervening decision of our Supreme Court in *Gianfelice Unemployment Compensation Case*, 396 Pa. 545, 153 A. 2d 906, discussed hereinafter.

Section 402(b)(1) of the statute (43 P.S. 802(b) (1)) provides in pertinent part as follows: "An employe shall be ineligible for compensation for any week . . . (b)(1) In which his unemployment is due to voluntarily leaving work without cause of a necessitous and compelling nature. . . And provided further, That no employe shall be deemed to be ineligible under this subsection where as a condition of continuing in employment such employe would be required to join or remain a member of a company union or to resign from or refrain from joining any bona fide labor organization". This language was construed by this court in *O'Donnell Unemployment Compensation Case*, 173 Pa. Superior Ct. 263, 98 A. 2d 406. In that case, we affirmed the denial of benefits to a claimant whose continued employment required maintenance of her union membership in good standing, but whose employment was necessarily discontinued by her employer, in accordance with the collective bargaining agreement, because claimant refused to pay a reinstatement fee of $25.00. As therein stated: "But claimant's unemployment resulted from her own fault, in that it was incurred entirely through her own procrastination, indifference, and arbitrary attitude. She was responsible for the situation, which could have been reasonably avoided, but which forced her employer to dispense with her services".

To the same effect is *Butler Unemployment Compensation Case,* 189 Pa. Superior Ct. 605, 151 A. 2d 843, wherein we affirmed the denial of benefits to a claimant who refused to join a bona fide labor organization with which the employer had a collective bargaining agreement. As stated in that case: "We are now definitely ruling that a claimant who fails or refuses to join or remain a member of a bona fide labor organization, as a condition of continuing in employment under the contract between such organization and employer, does not have a cause of a necessitous and compelling nature for leaving his work". Although the statute has since been amended many times, the legislature has not made any substantial change in the language of the proviso in Section 402 (b) (1) here under consideration, or in our interpretation thereof. The intent of the legislature seems clear, namely, that refusal to join a bona fide labor organization will constitute the employe a voluntary quit.

In *Gianfelice Unemployment Compensation Case,* supra, 396 Pa. 545, 153 A. 2d 906, the Supreme Court reversed the decision of the Superior Court in *Gianfelice Unemployment Compensation Case,* 186 Pa. Superior Ct. 186, 142 A. 2d 739. We had ruled that Gianfelice was a voluntary quit because he had retired at age 68 under the terms of a plan incorporated in the collective bargaining agreement. The Supreme Court ruled that the provisions of the agreement relating to retirement did not control the employe's right to unemployment compensation. In holding that Gianfelice did not retire voluntarily, it was expressly stated that Section 701 of the statute (43 P.S. 861) rendered invalid any agreement by an employe to waive or release any of his rights under the Act.

This court thereafter decided *Williams Unemployment Compensation Case,* 193 Pa. Superior Ct. 320, 164 A. 2d 42, in which the writer concurred only in the re-

sult. In that case the employe was laid off for lack of work and placed on a recall list. He was required by the collective bargaining agreement to pay $1.05 monthly tax to the international union. Nonpayment of this tax by the tenth of the month resulted in suspension. However, if payment was made by the thirtieth of the month, automatic reinstatement would follow. Under the by-laws of the local union, on the other hand, to obtain reinstatement a delinquent employe was required to pay a fine equal to fifty hours of pay. The claimant offered to make timely payment of the international tax. It was held that the additional demand of the local union constituted "an outrageous penalty", and benefits were allowed.

We are not in accord with the ultimate determination of the Board of Review that the instant case is controlled by the *Gianfelice* and *Williams* cases. In each of them the employe was a member of a bona fide labor organization and, as such, a party to the collective bargaining agreement. That agreement was held to be invalid so far as it waived or released any of his rights to unemployment compensation. In the case at bar, however, claimant has merely been required to join a bona fide labor organization on reasonable terms. His present difficulty results from his own voluntary failure to comply with this requirement. It is our view that he does not come under the shelter of the statutory proviso. He was not forced to join or remain a member of a company union or to resign from or refrain from joining a bona fide labor organization. As previously indicated, it is significant that the legislature did not include within the protection of the proviso an employe who is required to join a bona fide labor organization.

It is also important to note that the *Gianfelice* case was recently distinguished, and its impact limited, in *Lybarger Unemployment Compensation Case*, 418 Pa. 471, 211 A. 2d 463, in which our Supreme Court af-

firmed the decision of this court in *Lybarger Unemployment Compensation Case,* 203 Pa. Superior Ct. 336, 201 A. 2d 310. In the *Lybarger* case claimants were ruled ineligible for voluntarily leaving work although they were required to quit by the terms of the collective bargaining agreement. The Supreme Court held that the *Gianfelice* case was not controlling. This is a proper step toward the original position of the Superior Court in the *Gianfelice* case. Mr. Justice ROBERTS made the following pertinent statement: "The use of the word 'involuntary' in the declaration of public policy section is enlightening because the Legislature equates that word with the phrase 'through no fault of their own' ". It therefore seems clear that the word "voluntary" is to be equated with the phrase "through the employe's own fault". In the case at bar claimant was at fault, as the Board of Review originally held, in refusing to comply with the fair and reasonable adjustment worked out by the employer with the union.

In conclusion, for eighteen years this claimant consistently obtained and accepted all the benefits of the collective bargaining agreement, including a pension which he now enjoys, without ever having paid a single penny into the union treasury. We are of the opinion that he is not entitled to receive unemployment compensation benefits as a consequence of his own refusal to join the union on payment of a reasonable sum for initiation fee and current dues.

Decision reversed.

---

DISSENTING OPINION BY MONTGOMERY, J.:

I respectfully dissent.

This claimant's original employment dates back to 1943 when he was first hired as a janitor without any conditions as to union membership. Thereafter he was inducted into the military service and under Section 8(c) of the Selective Training and Service Act of 1940,

ch. 720, 54 Stat. 890, was assured reinstatement to the job he left. Prior to his return, his employer entered into a collective bargaining agreement with Local No. 29, Building Service Employes Union, a bona fide labor organization, by which it was necessary for the appellant-employer to employ only members of that union. Nevertheless, when claimant returned from the military he was reinstated in his former position without being required to join the union and it was not until 18 years later, in 1963, that he was first requested to join. At this time he was tendered union membership on the payment of fifteen dollars for initiation fee, the current 1963 dues and also the dues for the prior year 1962, although at first he was asked to pay a much larger sum to cover the 18 years during which he had worked after his return from service.

At no time has claimant been a union member or subject to the terms of the collective bargaining agreement. Therefore, cases such as *Gianfelice* and *Lybarger* have only limited application since they involved claimants who were union members. Furthermore, Section 402(b)(1), 43 P.S. §802(b)(1), of the statute has no application because claimant was not required to join a *company* union or to resign from or refrain from joining a bona fide labor organization. On the contrary, he was being *required* to join the latter type organization as a condition for his continued employment by appellant. The Board in its decision stated that, ". . . [claimant] was dropped from the payroll because he was not and would not become a member of this union." Whether his separation be considered a voluntary quit or a dismissal, the only question presented to us is whether his refusal to join Local 29 renders him ineligible for unemployment benefits.

For our purpose we shall assume that appellant could legally terminate the employer-employe relationship at any time after the expiration of the one year

provided by the Selective Training and Service Act. Closed shop agreements are valid under the Pennsylvania Labor Relations Act of June 1, 1937, P. L. 1168, §6, as amended, 43 P.S. §211.6, and an employer may require his employes to join the union as a condition for continuing their employment. *Brown v. Lehman,* 141 Pa. Superior Ct. 467, 15 A. 2d 513 (1940).

Numerous cases on this point have reached this Court, as well as our Supreme Court, under various factual situations. In *Barclay White Co. v. Unemployment Compensation Board of Review, Department of Labor and Industry,* 356 Pa. 43, 50 A. 2d 336 (1947), cert. denied, 332 U.S. 761, 68 S. Ct. 63, 92 L. Ed. 347, the claimant, a union member, was denied benefits when he would not accept work in an open shop. Therein it was held he refused "suitable work" without "good cause".

In *O'Donnell Unemployment Compensation Case,* 173 Pa. Superior Ct. 263, 98 A. 2d 406 (1953), we held a union member ineligible, by failing to pay reasonable charges imposed by her union, on the theory that she did not take reasonable precaution to preserve her employe status, thereby making her a voluntary quit.

In *Wallace Unemployment Compensation Case,* 187 Pa. Superior Ct. 618, 620, 145 A. 2d 902, 903 (1958), we remanded a case for a specific finding but said, "A claimant who refuses to join a union is not barred from unemployment benefits unless he had knowledge that the employer operated a closed shop when he applied for work and joining the *shop union* was made a condition of his employment, in the contract of hiring." (Emphasis supplied.)

However, in *Butler Unemployment Compensation Case,* 189 Pa. Superior Ct. 605, 608, 151 A. 2d 843, 845 (1959), we distinguished between a company union and a bona fide labor organization and stated, "We are now definitely ruling that a claimant who fails or refuses

to join or remain a member of a bona fide labor organization, as a condition of continuing in employment under the contract between such organization and employer, does not have a cause of a necessitous and compelling nature for leaving his work." In that case claimant had been hired and worked several weeks before she was told of the requirement of union membership and was denied benefits on her refusal to join.

But in *Williams Unemployment Compensation Case,* 193 Pa. Superior Ct. 320, 325, 164 A. 2d 42, 45 (1960), although we did not expressly reverse *Butler,* we did so in effect by saying, "In view of the now established rule of the Gianfelice case, supra, and after a careful examination of the above language contained in the act in question, I am unable to read into this language a legislative intention to deny benefits to an employee as a 'voluntary quit' for failure to meet the terms of a collective bargaining agreement and so create the hardship this act was intended to alleviate." We said further, "By ruling 'that a claimant who fails or refuses to join or remain a member of a bona fide labor organization as a condition of continuing in employment under the contract between such organization and employer, does not have a cause of a necessitous and compelling nature for leaving his work', this Court goes far beyond the intent of the legislature." We referred to *Barclay White Co. v. Unemployment Compensation Board of Review, Department of Labor and Industry,* supra, in that opinion. The courts of some sister states differ on this issue.[1]

As previously stated, I do not believe this case is dependent on *Gianfelice* or *Lybarger* since claimant was not a party to the labor contract. I would allow him benefits for the reason that he was hired when there was no union contract and worked for many years as

---

[1] See 90 A.L.R. 2d 851, §7.

a nonunion employe. Under such circumstances it would be unreasonable to impose on him a condition that is the subject of recent controversy in the United States Congress[2] and involves an important right of workers, i.e., the freedom of choosing whether to join a labor union or not. This right is preserved by both the National Labor Management Relations Act as well as that of Pennsylvania. See generally the Act of June 1, 1937, P. L. 1168, 43 P.S. §211.1 et seq.; *American Federation of Labor v. Watson*, 327 U.S. 582, 66 S. Ct. 761, 90 L. Ed. 873 (1946); 56 C.J.S. Master and Servant §28(2), page 116.

This conclusion is consistent with the *Barclay White Co.* case, supra. If a union man may be denied unemployment benefits because he refuses referral work in an open shop, a nonunion man should receive benefits when an employer requires union membership as a condition for continuing his employment in a union shop. An employer should not be permitted to use union membership to suit his own purpose. Consistency requires that the importance of union membership be evaluated the same in all cases. If it is unimportant for purposes of unemployment compensation, as was held in *Barclay White Co.*, then it should be held unimportant in the present case. However, it would not be necessary to decide at this time whether a refusal to join the union of a closed shop to which an unemployed nonunion workman has been referred makes him ineligible for subsequent unemployment benefits.

I am not impressed by the argument advanced by appellant that it was not an unreasonable request to ask claimant to pay $51, which included one year's back dues to cover the 18 years during which he had

---

[2] So-called "right to work" provision, Section 4(b) of the Labor Management Relations Act, the Act of June 23, 1947, ch. 120, Title I, §101, 61 Stat. 151, as amended, 29 U.S.C. 164.

received the same benefits union employes had enjoyed through collective bargaining. Such benefits were bestowed willingly by the employer who must have been satisfied that claimant had earned them. He was discharged at age 65 after 20 years of faithful service. I would consider any demand by the union for back years an unjustified demand, as was held in *Williams,* supra. This would be another reason for granting benefits to claimant.

I would affirm the decision of the Board in allowing benefits.

WATKINS, J., joins in this dissenting opinion.